CITY OF CLARKTON, Plaintiff–Respondent,

v.

Kevin L. MANES, Defendant–Appellant.

No. 25629.

Missouri Court of Appeals, Southern District, Division One.

Aug. 3, 2004.

Daren K. Todd, Welch, Todd, Malden, MO, for appellant.

Jim R. Bruce, Kennett, MO, for respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Kevin L. Manes ("Defendant") was convicted of driving while intoxicated, in violation of City of Clarkton ("the City") municipal ordinance no. 186. The jury found Defendant not guilty on Count II, failure to stop for a stop sign, a violation of municipal ordinance no. 80. Defendant was sentenced to thirty days in the Dunklin County Jail on Count I. Defendant raises two points on appeal, and contends that the trial court erred in admitting ordinance no. 80 into evidence because the City failed to comply with § 479.250, RSMo 2000, and that the trial court erred in refusing to dismiss the City's case because the City failed to endorse any witnesses on the information or advise Defendant of any of the witnesses called at trial. The City requests that we award damages for a frivolous appeal.

### Facts

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. On October 27, 2002, at approximately 5:30 p.m., Officer Joshua Long, a patrolman employed by the Clarkton Police Department, observed Defendant's vehicle cross the

centerline several times. Long turned on the lights of his police vehicle, and Defendant eventually pulled off the side of the road. According to Long, prior to stopping, Defendant failed to stop at a stop sign.

Long noticed a strong odor of alcohol emanating from Defendant, and also observed that Defendant had trouble walking and keeping his balance. In addition, Defendant's eyes were bloodshot, his speech was slurred, and Defendant said he had been at a bar.

Long administered two field sobriety tests at the scene, the walk-and-turn test and the one-leg stand test. During the walk-and-turn test, Defendant stumbled from side to side and stepped off the straight line three times, after which Long discontinued the test. During the one-leg stand test, Defendant kept putting his foot down and could not keep his balance. Long stopped that test and placed Defendant under arrest. Long noted that Defendant was cooperative and, because of that cooperativeness, Long told Defendant that his car would not be towed and that Long would transport him home after a breathalyzer test was administered.

Long transported Defendant to Campbell Police Department to have a breathalyzer test completed, because an officer there, Officer Riley, could administer the test. According to Long, no one in the City has a breathalyzer machine or can administer the test. After arriving at Campbell, Defendant became uncooperative, and started cursing and yelling. At some point Officer Riley said, "I can't deal with this[,]" and Long decided to transport Defendant to the Dunklin County Jail ("the jail") for the breathalyzer test.

Trooper Richard Owens of the Missouri Highway Patrol was called to the jail to administer the test. When Defendant arrived at the jail, he was still yelling and cursing, and Owens kept hearing Defendant say, "I'm going to kick his ass." Based on Defendant's conduct, Owens called another patrol officer and requested that he come to the jail for safety purposes. Although it was two hours after Defendant had been initially stopped by Long, Owens detected a strong odor of intoxicants emanating from Defendant and noticed Defendant's eyes were bloodshot.

Long completed the Alcohol Influence Report and informed Owens that Defendant had been read the implied consent portion of the report and had agreed to take the breathalyzer. Owens entered Defendant's information into the breathalyzer machine and then gave Defendant instructions on how to perform the test. Rather than perform the test, however, Defendant stated, "Fuck you, I'm not taking the test." Owens entered a refusal into the breathalyzer at 7:49 p.m. After Defendant's refusal to submit to the breathalyzer test, Defendant was "booked ... and put ... in ... the drunk tank."

Defendant was charged by information with driving while intoxicated, in violation of city ordinance no. 186, and failing to stop for a stop sign, in violation of ordinance no. 80. The jury trial was held on March 27, 2003, and the jury found Defendant guilty of driving while intoxicated, but not guilty of failing to stop for a stop sign. Defendant was sentenced to thirty days in the Dunklin County Jail. The trial court denied Defendant's motion for new trial, and this appeal followed.

## Discussion

Defendant raises two points on appeal. Additional facts necessary to the disposition of the case are included below as we address each of the points.

*Point I—Admission into evidence of ordinance no. 80*

■ In his first point, Defendant argues that the trial court erred in admitting exhibit 3, ordinance no. 80, because the City did not comply with § 479.250, RSMo 2000. According to Defendant, the exhibit should not have been admitted into evidence because it was not certified by the city clerk, did not contain the City's seal, and there was no affidavit prepared related to the document.

Section 479.250, RSMo 2000, provides:

In the trial of municipal ordinance violation cases, a copy of a municipal ordinance which is certified by the clerk of the municipality shall constitute prima facie evidence of such ordinance. If such certified copy is on file with the clerk serving the judge hearing a case and readily available for inspection by the parties, the judge may take judicial notice of such ordinance without further proof.

■ It is well settled that neither a trial court nor an appellate court may take judicial notice of a municipal ordinance. *St. Louis County v. Afshari,* 938 S.W.2d 303, 305 (Mo.App.1997). Further, a valid municipal prosecution requires, at the very least, proof of the ordinance upon which the conviction rests. *Id.* at 304–05. Such proof may be achieved through a formal presentation or by stipulation. *Id.* If the existence and terms of the ordinance are not known, the offense remains undefined, and a conviction based on the ordinance may not stand. *City of University City v. MAJ Inv. Corp.,* 884 S.W.2d 306, 307 (Mo. App.1994).

We acknowledge that Defendant only raises an issue here with ordinance no. 80, which is the City's municipal ordinance defining a violation for failure to stop for a stop sign. Defendant was not prejudiced by any alleged error. *See State v. Vin-*

*cent,* 59 S.W.3d 34, 37 (Mo.App.2001). Rather than stop the analysis there, we proceed because the facts surrounding the alleged error in Point I provide an overall picture that will be helpful not only to a complete analysis of Point I, but to the analysis of Point II and the City's request for damages for a frivolous appeal.

During pre-trial proceedings, the City asked defense counsel to stipulate that certain documents were the ordinances, both no. 80 and no. 186 (outlining driving while intoxicated). Defense counsel refused, and the City indicated that it would simply ask the city clerk to testify to authenticate the documents. When defense counsel indicated that he had not had an opportunity to review the copies of the ordinances that the City intended to offer as exhibits, the City agreed to make them available to Defendant.

Wanda Crowder, the city and court clerk for the City, was called as the City's first witness at trial. Before calling Crowder to the stand, the City asked defense counsel again if he would stipulate that the documents were the ordinances, and defense counsel indicated he was "not willing to stipulate." There was extensive discussion, some of which will be outlined more fully later in this opinion, regarding Defendant's objection to Crowder's testimony because she had not been endorsed as a witness. Intermingled with that discussion was dialogue concerning whether Crowder could testify regarding the municipal ordinances.

The trial court noted that, in its view, there had not been much cooperation in this case from either the City's or Defendant's side. The City noted that Defendant was aware of the ordinances and that proving them was part of the City's case, and the trial court agreed, telling defense counsel, "[Y]ou all can't look me in the eye

and tell me with good conscience, that this is a surprise to you." The court also noted that all of the information necessary had been in the court's files for several weeks and that defense counsel was making copies from the file the day before the trial. Before overruling defense counsel's objections and allowing Crowder to testify, the trial judge again admonished both sides, stating that he did not agree with the way either the City or the defense had handled the case and "that both parties could have gotten together and got all these things resolved a long time ago."

As Crowder began testifying and the City attempted to introduce ordinance no. 186 as exhibit 4, defense counsel objected based on § 479.250, RSMo 2000, alleging that the document was not "properly certified or put with the seal of the City Clerk of Clarkton." Defense counsel also stated, "The testimony of Ms. Crowder, while it is compelling, is not properly authenticated." Defense counsel also presented the trial court with some cases on the matter.

The City agreed that the cases did show that it was necessary for municipal ordinances to be certified as stated in § 479.250, RSMo 2000, but that those cases only applied in the absence of having the person authenticate the documents through testimony of a "live witness." Once the City offered exhibit 4, and defense counsel re-stated his objection to its admittance, the trial court overruled the objection, "finding that the City Clerk laid a proper foundation for the admission of [the] ordinance[.]" The City then offered ordinance no. 80, exhibit 3, and it was admitted over defense counsel's objection. Thus, copies of both ordinances were received into evidence, which was the extent of the direct testimony of Crowder.

On cross-examination, defense counsel asked the same three questions about each of the exhibits. Did the document have the seal of the City of Clarkton on it? Was the document certified by Crowder? Did Crowder prepare an affidavit with respect to the exhibit? Crowder answered "no" to each question and also verified that she "just made photocopies as [she was] directed to do[.]"

Proof of a municipal ordinance may take place as outlined in § 479.250, RSMo 2000, but as noted above, may also take place through formal presentation. *St. Louis County*, 938 S.W.2d at 304–05. Although "formal presentation" is not defined, nothing in the statute precludes, and we agree with City that the phrase reasonably includes, live testimony of the person who can authenticate the document. Point I is denied.

*Point II—Endorsement of witnesses*

In his second point, Defendant contends that the trial court erred in refusing to dismiss the City's case because the City failed to endorse any witnesses on the information and Defendant was not advised of the name of any witnesses. The City concedes that the informations by which Defendant was charged (one for each of the two counts) listed no witnesses.

Rule 23.01(f) requires that "[t]he names of all material witnesses for the prosecution shall be listed except rebuttal witnesses and witnesses who will appear upon the trial for production or identification of public records." Further, "[a]dditional witnesses may be listed at any time after notice to the defendant upon order of the court." Under § 545.240, RSMo 2000, "[t]he names of the witnesses for the prosecution must be affixed to the information, in like manner and subject to the same restrictions as required in case of indictments."

The trial court has broad discretion in permitting the late endorsement of witnesses. *State v. Jones*, 854 S.W.2d 60, 64

(Mo.App.1993). It is the defendant's burden to show an abuse of discretion. *Id.* Absent an abuse of discretion or prejudice, a conviction will not be overturned because a witness was endorsed on the day of trial. *State v. Stamps,* 865 S.W.2d 393, 397 (Mo. App.1993).

In determining whether the trial court abused its discretion, we consider the following factors: (1) whether Defendant waived the objection; (2) whether the City intended to surprise Defendant or acted deceptively or in bad faith intending to disadvantage Defendant; (3) whether Defendant was, in fact, surprised and disadvantaged; and (4) whether the type of testimony given could have been readily contemplated by Defendant. *State v. Downen,* 3 S.W.3d 434, 437 (Mo.App.1999).

Within the analysis of Point I, some of the discussion regarding defense counsel's objections regarding the City's failure to endorse witnesses was addressed. When Crowder was called to testify, defense counsel objected on the basis that she had not been endorsed pursuant to Rule 23.01(f). The City argued that it was unnecessary to endorse Crowder as a witness. It was noted that the City's two other anticipated witnesses, Long and Owens, had not been endorsed either.

The trial court made it clear to the City that "it would have been best if you were to have filed an information long ago, with all the witnesses endorsed on it." However, the trial judge also indicated that he "did not notice in the file that any discovery request had been made by the defense." The trial court continued with its commentary, noted above in Point I, regarding its disappointment in the lack of cooperation between the City and defense counsel.

In response to the trial judge's comment that, "[Y]ou all can't look me in the eye and tell me with good conscience, that this is a surprise to you[,]" defense counsel stated, "That's correct. No, I'm not saying it's a surprise. We're saying there was no one endorsed." The court expressed again that it agreed with defense counsel that the witnesses should have been endorsed, but also noted that defense counsel could have raised that by motion prior to trial. The trial judge overruled defense counsel's objection, stating that he was

> not going to prevent the witness [Crowder] from testifying, because I feel like that the defense was not surprised by the witness being called today. And I feel like that the defense could have taken additional steps on discovery, if they need to. So I'm going to go ahead and let the witness testify today is my ruling.

Before proceeding to question Crowder, the City noted that it intended to call Long and Owens as witnesses, neither of whom had been endorsed, and wanted to clarify whether the court's ruling applied to their testimony as well. Defense counsel verified that they would be objecting to all witnesses on the failure-to-endorse ground.

The trial court overruled defense counsel's "motions" to not allow the witnesses to testify. The trial judge further stated, "If you would like to take some time, I will be glad to delay this jury. We'll set here till midnight if necessary to get this thing done. You guys can go out in the hall and interview these witnesses." Defense counsel responded, "No, we're ready to go, Your Honor." Crowder then proceeded to testify and later, Long and Owens testified, without further objection from defense counsel.

Both at trial, and on appeal, Defendant bases his argument in Point II on the fact that the witnesses were not endorsed. However, at trial he conceded that he was not surprised by the witnesses. Further,

with respect to the testimony of Long and Owens, it was the type of testimony that should have been readily contemplated by Defendant. As for Crowder, her testimony should not have been a surprise either; further, Rule 23.01(f) provides an exception to the endorsement rule where a witness appears "for the production or identification of public records." Point II is denied.

*The City's request for award of damages for frivolous appeal*

■ In its respondent's brief, the City requests that we award damages for a frivolous appeal. Rule 84.19 allows such an award in an amount "deem[ed] just and proper[,]" if we determine that an appeal is frivolous.

■ An appeal is frivolous if it "presents no justiciable question and, on the face of the record, has no merit and thus holds little prospect for success." *Burns v. DeWitt Associates, Inc.*, 826 S.W.2d 884,

888 (Mo.App.1992) (citations omitted). Awarding damages for a frivolous appeal is a drastic remedy that should be exercised with extreme caution. *St. Charles County v. Wegman*, 90 S.W.3d 142, 145 (Mo.App. 2002). Given the circumstances of this case, including the City's failure to comply with the rules regarding the endorsement of witnesses that was the basis of Defendant's Point II, the City's request for damages for a frivolous appeal is denied.

### Conclusion

The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.